UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | |
| **KIONTA WRIGHT** | **NO.: 18-00071-BAJ-EWD** |

### RULING AND ORDER

Before the Court is the **Motion to Suppress (Doc. 16)** filed by Defendant, seeking the suppression of statements made and evidence seized during a traffic stop that occurred on July 5, 2017. (*Id.* at 2). The United States filed a Response. (Doc. 20). On August 16, 2018, the Court held an evidentiary hearing. For the reasons herein described, the **Motion to Suppress (Doc. 16)** is **DENIED**.

I.     **BACKGROUND**

On July 5, 2016 East Baton Rouge Sheriff's Office Deputies Jared Wilson and Michael Fontenot were on patrol in a marked police vehicle as part of the Special Community Anti-Crime Team ("SCAT"). According to the United States, SCAT's goal is to eliminate street-level narcotics, prostitution and gang-related crimes, and its officers regularly patrol certain areas of the city to search for evidence of such crimes. Deputy Wilson and Deputy Fontenot testified that on July 5, 2016, they spotted a black Toyota Camry approaching from the opposite direction. Deputy Wilson, who was driving the marked police vehicle, testified that he observed a crack in the windshield on the driver's side of the Camry, which he believed to be a violation of

Louisiana Revised Statutes § 32.282. Deputy Wilson made a U-turn to stop the Camry, but it disappeared from view. The deputies testified that they drove for several blocks searching for the Camry before spotting it again. They followed the Camry, activated the emergency lights, and came up behind the vehicle as it pulled into a parking lot.

Video evidence showed that Deputy Wilson approached the driver's side of the Camry while Deputy Fontenot approached the passenger's side. Tamond Brown, who is not a party to these proceedings, sat in the driver's seat and Defendant sat in the passenger's seat. Deputy Wilson and Deputy Fontenot both testified that as they reached the Camry, they smelled the odor of marijuana emanating from the vehicle's windows.

Deputy Wilson testified that he immediately communicated the purpose of the stop to Mr. Brown and asked for his license, registration and insurance information. The deputies then instructed both Mr. Brown and Defendant to exit the Camry and place their hands on the roof of the vehicle. Both deputies testified that they decided to conduct a pat down search of Mr. Brown and Defendant because of the smell of marijuana and because of the two individuals' nervous reactions, particularly Defendant's. Specifically, both deputies testified that Defendant immediately threw his hands in the air as the officers approached the vehicle and was trembling and sweating throughout the course of the traffic stop. It is undisputed that the deputies did not discover contraband or evidence during these pat down searches.

Video evidence shows that Deputy Wilson then conducted a search of the vehicle for evidence of marijuana. During this search, Deputy Wilson discovered a

2

Glock Model 27 .40 caliber semi-automatic handgun, equipped with an extended 22 round magazine and loaded with seventeen rounds of ammunition, beneath the front passenger seat of the vehicle. Deputy Wilson testified that at some point, Defendant confessed that the gun belonged to him. The deputies then placed Mr. Brown and Defendant in the back of the police vehicle. The deputies ran Defendant's name through their computer system and discovered that he had previously been convicted of armed robbery. Ultimately, the deputies did not discover any evidence of marijuana in the Camry. Defendant was charged in a one-count indictment with possession of a firearm by a convicted felon in violation of 18 U.S.C. §922(g)(1).

## II. DISCUSSION

### A. Suppression of Defendant's Statements

Defendant seeks to suppress any statements he made on the date of his arrest, to include shaking his head up and down to indicate "yes" when Deputy Wilson inquired if the firearm belonged to him. (Doc. 25 at pp. 2-3). The United States has asserted that it will not seek to introduce any statements made by Defendant on the date of his arrest. (*Id.*). Accordingly, the portion of Defendant's motion to suppress seeking the suppression of his statements, at trial, is denied as moot.

### B. Suppression of Evidence Discovered in Vehicle

Generally, "[t]he proponent of a motion to suppress has the burden of proving, by a preponderance of evidence, that the evidence in question was obtained in violation of his Fourth Amendment rights." *United States v. Turner*, 839 F.2d 429, 432 (5th Cir. 2016) (quoting *United States v. Smith*, 978 F.2d 171, 176 (5th Cir. 1992)). However, in cases where a warrantless search occurs, the United States bears the

3

burden of proving that the search was valid. *United States v. Waldrop*, 404 F.3d 365, 368 (5th Cir. 2005) (citing *United States v. Castro*, 166 F.3d 728, 733 (5th Cir. 1999)). It is undisputed that the deputies did not have a warrant to search the vehicle in this case; thus, the Government bears the burden of proving that the search of the vehicle satisfies the constitutional standards.

### *1. Initial Stop of the Vehicle*

The United States Court of Appeals for the Fifth Circuit has held that the legality of a traffic stop is determined through a two-tiered reasonable suspicion inquiry. First a determination must be made as to whether the officer's action was "justified at its inception." *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005). Second a determination must be made as to whether the actions of the officer were "reasonably related in scope to the circumstances which justified the interference in the first place." *Id.*

For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred or is about to occur before stopping the vehicle. *Id.* The Court agrees with the United States' argument that the cracked windshield gave the officers reasonable suspicion to conduct a traffic stop. A cracked windshield that obscures the driver's view violates Louisiana Revised Statutes § 1304A(4)(a).

An officer's actions must also be reasonably related to the circumstances that justified the stop. Here, the deputies' decision to pull over Mr. Brown and Defendant with the intention of giving them a warning or traffic citation was reasonably related

4

the cracked windshield.[1] The Court also finds that the officers' actions in prolonging the stop were justified. The Fifth Circuit has held that "should additional reasonable suspicion [arise] in the course of the stop . . . detention may continue until the new reasonable suspicion has been dispelled or confirmed." *Lopez-Moreno*, 420 F.3d at 430-31. Once the deputies smelled marijuana emanating from the vehicle, additional reasonable suspicion of illegal activity arose, which provided the officers with the authority to prolong the traffic stop to confirm or dispel their suspicion that the occupants possessed marijuana.

### 2. *Search of the Vehicle*

The Supreme Court has established that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). One such exception is the automobile exception. If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment permits police to search the vehicle without a warrant. *United States. v. Anaya-Sanchez*, 242 Fed. App'x 215, 217 (5th Cir. Sep. 11, 2007) (citing *Carroll v. United States*, 267 U.S. 132, 153,156 (1925)).

---

[1] The Court notes that certain facts surrounding the officers' efforts to pursue the subject vehicle raise concerns. For instance, after the deputies noticed Defendant's vehicle and it disappeared from view, they searched the area for several blocks, often driving at what appears from the dash mounted video camera to be a high rate of speed through a residential area, ostensibly to enforce a relatively minor traffic violation. Although the Court is troubled by the pretextual nature of the stop, the law does not offer relief from prosecution.

Deputy Wilson and Deputy Fontenot testified that they searched the vehicle because they observed Defendant acting nervously and smelled marijuana as they approached the vehicle. The Court rejects the United States' assertion that Defendant's nervousness meaningfully contributed to a probable cause finding. Any reasonable person, innocent of any wrongdoing, could display signs of nervousness if pulled over by the police. However, the Fifth Circuit has held that the smell of marijuana emanating from a vehicle alone is sufficient to constitute probable cause. *United States v. Newton*, 463 Fed. App'x 462, 466 (5th Cir. 2012) (citing *United States v. Ibarra Sanchez*, 199 F.3d 753, 760 (5th Cir. 1999)). Therefore, the Court finds that the deputies had probable cause to search the vehicle for evidence of marijuana, rendering the search reasonable under the Fourth Amendment. During that search they found the gun under the front passenger's seat. Accordingly, the evidence seized from the vehicle was obtained in conformity with applicable constitutional standards.

III. CONCLUSION

Accordingly,

**IT IS ORDERED** that the **Motion to Suppress (Doc. 16)** is **DENIED**.

Baton Rouge, Louisiana, this 12th day of October, 2018.

_____
JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

6